536 So.2d 793 (1988)
Jan Schenthal, Wife of and Guy Britton MIOTON, Jr.
v.
Diana Rainey, Wife of and Charles A. MANNINA.
No. 88-CA-463.
Court of Appeal of Louisiana, Fifth Circuit.
December 14, 1988.
Thomas G. Wilkinson, William P. Connick, Gretna, for plaintiffs/appellants.
Charles E. Cabibi, Cabibi & Cabibi, New Orleans, for defendants/appellees.
Before GRISBAUM, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
This is a dispute between property owners over the building of a carport and driveway by the plaintiffs.
Dr. and Mrs. Guy Britton Mioton bought a house in Garden Oaks Lane Subdivision in December, 1985. That subdivision abuts Red Gate Subdivision at the rear property lines of lots in the two subdivisions. In 1987 the Miotons obtained a permit from the Jefferson Parish Department of Public Works to renovate their house and construct a driveway on the strip of land behind their lot, in Red Gate, at a point where Southern Road ends in a cul-de-sac. The defendants and other neighbors complained of the Miotons' tearing out of part of the brick wall across their property and building the driveway. Work began in October, 1987. The immediate back neighbors, Mr. and Mrs. Charles A. Mannina, attempted to block it by placing barriers, including wooden fencing across the opening in the wall. The Miotons filed a petition for preliminary and permanent injunction against Mr. and Mrs. Mannina, who then reconvened for injunctive relief in their favor. Other Red Gate property owners intervened.
After trial of the matter, the judge found in favor of the Manninas and intervenors *794 and dismissed the Miotons' petition for injunction, ordering that a permanent injunction issue, prohibiting the Miotons from building a driveway from the rear of their property "over and across any portion of the strip of land between Mioton property and the street or roadway known as Southern Road and ordering plaintiffs to repair any damages to that property caused by them." Plaintiffs were cast for all costs. The plaintiffs filed for and were granted a suspensive appeal.
The issue raised by the plaintiffs/appellants is whether the court erred in ruling that the strip of land between Southern Road and their property line is privately owned by all the property owners of Red Gate subdivision.
The appellants assert that Southern Road and Red Gate Drive, which crosses Southern Road and provides entry to the subdivision at each end, are public roads by virtue of La.R.S. 48:491. That statute provides for "tacit dedication" of roads or streets that are maintained by a governing authority for three years.[1] They assert further that the right of way along the two streets is also public.
The appellees admit that the parish has maintained and repaired the paved street, which is about 26 feet wide; however, they contend that the Miotons have not carried their burden of proof that the parish maintained the right of way, other than cutting grass on the 14 feet wide circles in the middle of the two cul-de-sacs. For that reason, the Red Gate owners argue that the area abutting the paved street is private, having been maintained by the individual property holders. Furthermore, the property restrictions of the Red Gate Subdivision established the two roadways as private. They point out that at the time of the ordinance the United Southern Securities Company, Inc. had divested itself of ownership of the land by selling ten lots and had no authority to give away the property owners' rights; accordingly, the action of the Police Jury was null and void.
Red Gate Subdivision was established by the United Southern Securities Company, Inc. in the fall of 1956. On December 22, 1956, by authentic act, the corporation recorded the restrictions to be applicable to all property sold within the subdivision. The document provides, in pertinent part: 1) that a servitude is established in favor of all lots, giving the owners, their heirs and assigns, "the full use of the two private roadways known as Redgate Drive and Southern Road," as shown on a survey dated November 20, 1956; 2) that the property owners shall have the right to use and maintain and to have free access to the roadways perpetually; and 3) that the property owners shall be required to maintain the drains and roadways, to "make all proper repairs, reconstructions and replacements required to keep said roadways and drains in good order and condition...."
The court accepted into evidence a page from the minute book of the Jefferson Parish Police Jury, which includes the following entry, dated February 26, 1958:
On motion of Mr. Fitzgerald, seconded by Mr. Ladnier, the following streets in Redgate Subdivision, Ninth Ward were accepted for maintenance by Police Jury:
1. Redgate Drivefrom Garden Road to Midway Drive
2. Southern RoadExtending approximately 300 feet North & South of Red gate Drive
Motion carried.
We first consider the appellants' argument that the property owners tacitly dedicated Southern Road by allowing the parish to maintain it and that the road encompasses not only the paved street but the roadside.
Professor Yiannopoulos, in his treatise on property, summarizes the law relating to tacit dedication as follows, in pertinent part:

*795 This mode of dedication rests on the tacit consent of the landowner, which is considered established when he permits the public authorities to work the road or street without protest. A tacit dedication is effected "even when no real public purpose is served thereby, as when only one person utilizes the road," and a road may be declared public even if the police jury refuses to recognize it as public.
"Working and maintaining" means something more than an occasional "brushing up." However, public authorities need not spend large sums of money; maintenance of the road two or three times a year suffices. In the absence of proof of maintenance by the public there is no tacit dedication. The statute requires that the work and maintenance be done by public authority "whether legally authorized or not, and accomplished with materials and labor provided from public funds." A formal resolution by the police jury to maintain a private road with public funds would be ultra vires and without effect.
The public acquires by virtue of a tacit dedication a servitude of passage; the ownership of the land on which the road or street is built is not conveyed to the public. The land on which a tacitly dedicated road or street is built is, therefore, a private thing subject to public use. Upon termination of the public use for any cause the land is freed of the burden. [Footnotes omitted.]
A.N. Yiannopoulos, 2 Louisiana Civil Law Treatise: Property, Sec. 66 (2d Ed. 1980).
Whether sufficient maintenance has been performed by the public authority to effect a dedication is a question of fact which may not be overturned on appeal in the absence of manifest error. Garner v. Waddill, 421 So.2d 1144 (La.App. 2nd Cir.1982).
As to the width of the land tacitly dedicated, the right of way is limited to the area actually maintained by the parish. Michael v. State, 129 So.2d 587 (La.App. 2nd Cir.1961). A recent case, Smith v. Mahfouz, 489 So.2d 409 (La.App. 3rd Cir. 1986), writ denied 494 So.2d 1181 (La.1986), held that in the absence of evidence establishing the width of the servitude in a tacit dedication, La. R.S. 48:495 is applicable. That statute provides that all roads shall be at least 25 feet wide. The court interpreted the statute to mean that in tacitly dedicated roads, the servitude of passage may be limited to 25 feet. In Harkness v. Porter, 521 So.2d 832 (La.App. 2nd Cir.1988), affirmed 523 So.2d 1323 (La.1988), the court determined that the parish had maintained only the paved road and limited its servitude to the twenty-five feet requirement of R.S. 48:495. We note that the Smith and Harkness cases concerned privately owned rural land over which a right of way was tacitly dedicated; however, Michael v. State, upon which those cases rely, involved widening a two-lane highway, which ran through Minden, into a four-lane highway.
We now consider the evidence as to maintenance of Southern Road by the parish. Emile Cloutet, an employee of the Jefferson Parish Department of Public Works, testified for the plaintiffs as to work performed on the roadway of Southern Road and Red Gate Drive. In referring to the parish streets department records for three years beginning with 1980, Cloutet testified that routine grass cutting was performed along both roadways, and a "drop inlet" was placed in a grassy area in front of one residence to improve drainage.
On cross examination Cloutet was questioned about whether a work crew could have cut all the grass in the right of way area in the short periods noted on the work sheets, no more than three hours. He admitted it was doubtful and that he had not personally seen a crew at work there. The neighboring property owners, Dean Bruch and Charles Mannina, testified that they had maintained the area abutting their property to the curb line but that the Parish had cut grass in the circle at the cul-de-sac. Dr. Homer Watts testified that he had erected a picket fence and planted shrubbery in the strip in front of his property. Other neighbors were present in court to testify, but the parties agreed to stipulate that their testimony would be the same as the witnesses who testified, that *796 they themselves have maintained the areas between their lots and the roadway curb.
The trial judge stated his findings in his Reasons for Judgment as follows:
Plaintiffs in this case bear the burden of proving their case, by a preponderance of the evidence. For the grassy area adjoining the roadbed of Southern Road to become public property, R.S. 48:491 requires that the parish maintain, keep up or work the land for at least three years. Plaintiffs must prove that this condition has been met. They have failed to do so, and, in fact, defendants have proved that they have continuously maintained the property in question themselves, since the acceptance for maintenance of Southern Road. The Parish of Jefferson does not own the roadbed and therefore cannot permit plaintiffs to build a driveway over it.
We agree with the trial judge that the parish performed only occasional maintenance of the roadside, which was insufficient for tacit dedication of that area. Accordingly, we hold that right of way remains private.
As to the appellants' argument that the ordinance indicated the property owners' intent to dedicate the entire strip of Southern Road, including the rights of way, without a copy of the resolution itslef we cannot evaluate the intentions of the parties or the validity of the owner. However, we agree with the appellees that subdivision restrictions are real rights or covenants that run with the land for the benefit of the land owners. Beyt v. Woodvale Place Apartments, 297 So.2d 448 (La.App. 3rd Cir.1974), writ refused 300 So.2d 840 (La.1974), and cases cited therein. A parish or city ordinance enacted after a restrictive covenant has been validly established and recorded cannot interfere with that covenant. Oakridge Builders, Inc. v. Bryant, 252 So.2d 169 (La.App. 3rd Cir. 1971), writ refused 259 La. 945, 253 So.2d 384 (1971).
While we sympathize with the appellants, who proceeded in apparent good faith in reliance upon a permit, we find no error in the judgment and affirm.
AFFIRMED.
NOTES
[1] La.R.S. 48:491 reads as follows in pertinent part:

B. All roads or streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by authority of a parish governing authority within its parish, or by authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, unless in the parish of Vermillion....