Robert Ryan PIERCE, Ashlea White Pierce, William Earl Pierce and Jeanette Oxner Pierce

v.

Matthew B. MCCOY and Danna Loupe McCoy

NO. 2016 CA 0243

Court of Appeal of Louisiana, First Circuit.

OCTOBER 31, 2016

Robert H. Harrison, Jr., Watson, Louisiana, Counsel for Defendants/Appellants, Matthew B. McCoy and Dana Loupe McCoy

Wyman E. Bankston, Livingston, Louisiana, Counsel for Plaintiffs/Appellees, Robert Ryan Pierce, Ashlea White Pierce, Wil-

liam Earl Pierce, and Jeanette Oxner Pierce

BEFORE: HIGGINBOTHAM, THERIOT, AND CHUTZ, JJ.

THERIOT, J.

The defendants-appellants, Matthew B. McCoy and Dana Loupe McCoy ("the McCoys"), appeal a judgment rendered by the Twenty-First Judicial District Court granting injunctive relief and monetary damages in favor of the plaintiffs-appellees, Robert Ryan Pierce, Ashlea White Pierce, William Earl Pierce, and Jeanette Oxner Pierce ("the Pierces"). For the following reasons, we vacate the trial court's judgment and remand this case for a new trial.

## FACTS AND PROCEDURAL BACKGROUND

The instant appeal involves a disagreement between neighboring property owners concerning the placement of a driveway across disputed property as a means of accessing a public road. On January 21, 2015, the Pierces filed a petition for preliminary injunction, permanent injunction, and damages against the McCoys. The Pierces asserted that the McCoys had interfered with their interests and/or rights in immovable property deriving from their purchase of an approximately one-acre tract of land located in Section 61, T8S, R4E, Livingston Parish, Louisiana, identified in the record as "Tract X."

In their petition, the Pierces stated that after a period of continuous ownership of Tract X, they subdivided the property into two separate tracts of land, "Tract X-1" and "Tract X-2," for purposes of using the re-designated tracts as rental properties. The Pierces alleged that Tract X-1 shared, at least in part, an adjoining boundary with certain immovable property owned by the McCoys, identified in the record as "Tract D." The Pierces stated that the adjoining boundary line between Tract X-1 and Tract D fell within a fifty-foot servitude of access to McCoy Lane, a public asphalt road maintained by Livingston Parish and dedicated to public use.

The Pierces claimed that on May 1, 2014, they obtained a permit from the Livingston Parish Building & Permit Office "authorizing the installation of a culvert that would create a driveway and means of ingress and egress from Tract X-1 to McCoy Lane[.]" The Pierces stated that after the completion of construction of the culvert and driveway, they were issued a McCoy Lane municipal address for Tract X-1. The Pierces claimed that the McCoys then learned of their intent to place a mobile home onto Tract X-1 to use the property as a rental property, and responsively erected a fence across the driveway "on Tract X-1 and/or within the [s]ervitude blocking all ingress and egress from Tract X-1 to McCoy Lane...."

The Pierces therefore requested the trial court issue a preliminary and permanent injunction "enjoining [the McCoys] from trespassing onto Tract X-1 and/or obstructing or otherwise interfering with [the Pierces'] right to utilize the [d]riveway and/or [s]ervitude as a means of ingress and egress from Tract X-1 to McCoy Lane." In addition, the Pierces requested the trial court direct the McCoys to remove the fence or any other obstructions interfering with the Pierces' access to the driveway or servitude. Finally, the Pierces requested damages for, *inter alia,* loss of rental opportunities, inability to utilize the servitude to establish public utilities, and additional costs incurred in utilizing alternative means to access Tract X-1.

The McCoys responded to the petition by filing exceptions of no cause of action and no right of action. In their memorandum in support of the exceptions, the McCoys did not dispute the allegation that

they had impeded or obstructed the Pierces' ability to access McCoy Lane. Rather, the McCoys asserted that the Pierces had no right to cross the portion of property extending eastward from the centerline of McCoy Lane to the boundary of Tract X-1.[1] The McCoys averred that although Tract X-1 was landlocked, the property had been landlocked through the Pierces' subdivision of Tract X, which had access to La. Hwy. 42, into Tract X-1 and Tract X-2, the latter of which retained access to La. Hwy. 42 while the former did not.

On March 2, 2015, the trial court held a hearing on the issue of the preliminary injunction. The record on appeal does not contain a transcript of this hearing, but the minute entry and the trial court's judgment granting the preliminary injunction both reflect that counsel for the Pierces and the McCoys made appearances and offered arguments on the matter. Two days later, on March 4, 2015, the trial court signed a judgment granting the preliminary injunction enjoining the McCoys from trespassing upon Tract X-1 and/or obstructing or otherwise interfering with the Pierces' right to utilize the driveway and/or servitude as a means for ingress and egress to Tract X-1 from McCoy Lane.

Thereafter, on March 17, 2015, the trial court held a trial on the exceptions of no cause of action and no right of action and on the petition for permanent injunction and damages. In open court, the trial court denied the exceptions, ruled in favor of the Pierces on their petition for injunctive relief and damages, and directed counsel for the Pierces to prepare a judgment in accordance with the oral ruling. On April 15, 2015, the trial court signed a final judgment denying the exceptions of no cause of

action and no right of action, granting the permanent injunction enjoining the McCoys from trespassing upon Tract X-1 and/or obstructing or otherwise interfering with the Pierces' right to utilize the driveway and/or servitude as a means for ingress and egress to Tract X-1 from McCoy Lane, and awarding the Pierces $2,125.00 in damages.

The McCoys timely filed a motion and order for new trial pursuant to La. C.C.P. art. 1972(1), arguing that the trial court's judgment was clearly contrary to the law and the evidence. The trial court accepted memoranda from the parties on the motion and held a hearing on the matter on July 6, 2015. The record does not contain a transcript of this hearing, but the minute entry and the trial court's judgment denying the motion both reflect that counsel for the Pierces and the McCoys made appearances and offered arguments on the motion. On August 7, 2015, the trial court signed a judgment denying the motion for new trial. The McCoys now appeal.

## ASSIGNMENTS OF ERROR

The McCoys present the following assignments of error:

1. The trial court erred in granting the preliminary injunction without requiring the Pierces to present a *prima facie* showing of entitlement to the injunction.

2. The trial court erred in granting the injunctions in this matter, since the Pierces did not make an adequate showing of irreparable injury.

3. The trial court erred in its application of La. R.S. 48:491(B).

---

1. In their memorandum, the McCoys further argued that the disputed property was separately owned by Matthew McCoy's aged father, Allen McCoy. The McCoys later abandoned any argument pertaining to Allen McCoy's ownership of the disputed property, and now maintain that the property falls within the boundaries of Tract D.

## STANDARD OF REVIEW

■ Ordinarily, the manifest error standard of review applies to our consideration of a trial court's issuance of a permanent injunction.[2] See **Fern Creek Owners' Ass'n, Inc. v. City of Mandeville**, 08–1694 (La.App. 1 Cir. 6/30/09), 21 So.3d 369, 376. However, where legal error interdicts the fact-finding process, the manifest error standard of review is no longer applicable, and, where the record is otherwise complete, we must conduct our own de novo review of the record. See generally Ferrell v. Fireman's Fund Ins. Co., 94–1252 (La. 2/20/95), 650 So.2d 742, 747. See also **Easterling v. Estate of Miller**, 14–1354 (La.App. 4 Cir. 12/23/15), 184 So.3d 222, 226 (addressing same in the context of a petition for preliminary injunction).

## DISCUSSION

### Assignment of Error No. 1

In their first assignment of error, the McCoys argue that the trial court erred by granting the preliminary injunction without requiring the Pierces to present a *prima facie* showing of their entitlement to injunctive relief. In support of this assignment of error, the McCoys point out that the record does not contain a transcript of the hearing on the preliminary injunction and the minute entry reflects that no evidence was taken at the hearing. We find the issue of the preliminary injunction to be moot and, in light of the McCoys' remaining assignments of error, limit our review to the trial court's final judgment granting the petition for permanent injunction.

■ Louisiana jurisprudence holds that an issue is moot when a judgment or decree on that issue has been "deprived of practical significance" or "made abstract or purely academic." **Tobin v. Jindal**, 11–0838 (La.App. 1 Cir. 2/10/12), 91 So.3d 317, 321 (citing **Cat's Meow, Inc. v. City of New Orleans Through Dept. of Finance**, 98–0601 (La. 10/20/98), 720 So.2d 1186, 1193). In the context of a petition for injunctive relief, "where the trial court renders judgment on the merits on the petition for a permanent injunction ... the issue of the preliminary injunction becomes moot." **Tobin**, 91 So.3d at 321. See also **Silliman Private School Corp. v. Shareholder Group**, 00–0065 (La.App. 1 Cir. 2/16/01), 789 So.2d 20, 23, writ denied, 01–0594 (La. 3/30/01), 788 So.2d 1194.

In this case, the trial court held a trial on the petition for permanent injunction and damages after ruling on the issue of the preliminary injunction. Following the arguments of counsel and submission of evidence on the matter, the trial court signed a final judgment granting the petition for permanent injunction, thus rendering the issue of the preliminary injunction moot. The McCoys' first assignment of error does not merit relief.

### Assignment of Error No. 2

■ The McCoys' contend in their second assignment of error that the trial court committed reversible error by granting the Pierces' petition for injunctive relief without requiring the Pierces to prove irreparable injury. In support of this assignment of error, the McCoys argue that the Pierces could not prove irreparable injury since they also requested and were awarded money damages. We find that it is of no moment whether the Pierces presented evidence of irreparable injury.

■ Louisiana Code of Civil Procedure art. 3601(A) states that "[a]n injunction shall be issued in cases where irreparable

---

**2.** For reasons explained more fully, *infra*, we limit our review in this matter to the trial court's final judgment, signed on April 15, 2015, granting the petition for permanent injunction.

injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law[.]" In accordance therewith, a petitioner seeking injunctive relief must ordinarily establish that irreparable injury, loss, or damage will result if the requested relief is not granted. See **South Cent. Bell Telephone Co. v. Louisiana Public Service Com'n,** 555 So.2d 1370, 1372 (La. 1990) (citing La. C.C.P. art. 3601).

On appeal, the McCoys correctly point out that irreparable injury has been interpreted as a loss that cannot be adequately compensated in money damages or measured by a pecuniary standard. See e.g., **Parish of Jefferson v. Parochial Employees' Retirement System of Louisiana,** 15–1999 (La.App. 1 Cir. 9/16/16), 204 So.3d 260, 265 (citing |₈Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa, 04–0270 (La.App. 1 Cir. 3/24/05), 906 So.2d 660, 664).

However, as cited above, the plain language of La. C.C.P. art. 3601 authorizes injunctive relief in other cases specifically provided by law. Therefore, "th[e] article itself contains a provision recognizing the existence of grounds for an injunction which do not require the parties seeking the injunction to show evidence of irreparable injury." **Exxon Mobil Pipeline Co. v. Boyce,** 07–0241 (La.App. 1 Cir. 6/6/08), 2008 WL 2567649, *3 (unpublished).

Relevant here, La. C.C.P. art. 3663 provides, in pertinent part:

Injunctive relief, under the applicable provisions of Chapter 2 of Title I of Book VII, to protect or restore possession of immovable property or of a real right therein, is available to:

* * *

(2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right

therein of which he claims the ownership, the possession, or the enjoyment.

In **Exxon Mobil Pipeline Co.,** 2008 WL 2567649 at *3, this court addressed the burden of proof for a petitioner seeking injunctive relief pursuant to La. C.C.P. art. 3663. In that case, the petitioner requested a permanent injunction to protect and restore its real right of ingress and egress over certain property. The trial court denied the petition and this court reversed, explaining that "[p]ursuant to [La. C.C.P. art. 3663], [the petitioner] need only prove its real right has been disturbed, and that it or its ancestors in title have had the right of ingress and egress for more than one year, without the necessity to show irreparable harm." **Id.** Accord **Whitlock v. Fifth Louisiana Dist. Levee Bd.,** 49,667 (La.App. 2 Cir. 4/15/15), 164 So.3d 310, 319 (explaining, in the context of a petition for |₉preliminary injunction brought pursuant to La. C.C.P. art. 3663, that a petitioner need not prove irreparable injury to protect a real right in immovable property).

In this case, the Pierces explicitly stated in their petition that they sought injunctive relief to restore a real right in immovable property pursuant to La. C.C.P. art. 3663. Therefore, the Pierces were not required to prove irreparable injury. Instead, the Pierces were required to prove, by a preponderance of the evidence, that they enjoyed a real right of ingress and egress from Tract X-1 to McCoy Lane, that they enjoyed this right for more than a year, and that the McCoys had disturbed their enjoyment of such right. The McCoys' second assignment of error lacks merit.

*Assignment of Error No. 3*

■ In the McCoys' third assignment of error, they contend that the trial court erred by granting the Pierces' petition for injunctive relief based upon its erroneous application of La. R.S. 48:491(B). In support of this assignment of error, the

McCoys contend that the easternmost boundary of Tract D extends beyond the public right of way obtained by the tacit dedication of McCoy Lane, and they aver that the Pierces do not have any legal right to cross the disputed property in order to access McCoy Lane.

It appears that McCoy Lane was originally established as a private road over property belonging to the McCoys or their predecessors in title, but that, at some point prior to the institution of this suit, Livingston Parish took over maintenance of the road and paved it with the actual or constructive knowledge of the adjacent landowners, including the McCoys. It is uncontested on appeal that McCoy Lane became a public road by tacit dedication pursuant to La. R.S. 48:491(B)(1)(a), which provides:

> All roads and streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by the authority of a parish governing authority within its parish, or by the authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, if there is actual or constructive knowledge of such work by adjoining landowners exercising reasonable concern over their property.

Therefore, although the McCoys specifically assign error as to the trial court's application of La. R.S. 48:491(B), the operative issue is not whether the trial court erred in granting the permanent injunction based upon its finding that McCoy Lane is a public road pursuant to La. R.S. 48:491(B)(1)(a). Rather, in light of the issues fully briefed on appeal, the operative question is whether the trial court erred in granting the permanent injunction based upon its finding that the Pierces enjoyed a real right to use the disputed portion of land extending eastward from the paved travel portion of McCoy Lane to the

boundary of Tract X-1 as a means of ingress and egress from their private property to the public road.

■ Tacit dedication of a road pursuant to La. R.S. 48:491(B)(1)(a) creates a predial servitude of passage in favor of the public. See **Himel v. Bourque**, 14–1811 (La.App. 1 Cir. 12/11/15), 185 So.3d 42, 48. See also A.N. Yiannopoulos, 4 La. Civ. L. Treatise, Predial Servitudes § 11:22 (4th ed. 2016) ("The public acquires by virtue of tacit dedication a servitude of passage, as well as a servitude of public utility[,] ... ownership of the land on which the road or street is built is not conveyed to the public; therefore, the land becomes a private thing subject to public use."). [Footnotes omitted.]

■ The width of the public right of way acquired by tacit dedication is limited to the area actually maintained by the parish. **Grantadams v. Lacombe**, 96–674 (La.App. 3 Cir. 10/9/96), 688 So.2d 1130. See also **Mioton v. Mannina**, 536 So.2d 793, 795–96 (La. App. 5 Cir. 1988); **Harkness v. Porter**, 521 So.2d 832, 835 (La. App. 2 Cir. 1988).

The transcript of the trial on the petition for permanent injunction and damages reflects that the issue of the permanent injunction was submitted for consideration on the arguments of counsel and documentary evidence. In relevant part, three survey plat maps were submitted into evidence; collectively, the plat maps confirm that Tract X-1 lies directly to the east of Tract D and shares the entirety of its 111-foot westernmost boundary with a portion of the easternmost boundary of Tract D. Furthermore, the plat maps all depict Tract X-1 abutting a fifty-foot servitude of access to McCoy Lane, which servitude and road are shown positioned exclusively within Tract D.

While the plat maps all depict the westernmost boundary of Tract X-1 abutting a purported servitude of access to McCoy Lane, the sole legal basis argued for the existence of this servitude is through the tacit dedication of McCoy Lane, and the maps do not depict the exact position of the paved travel portion of McCoy Lane or otherwise indicate the extent of the area actually maintained by the parish. However, several photographs of the subject properties were admitted into evidence, and these pictures appear to depict a roadside ditch and an expanse of some measure of land to the east of the paved portion of McCoy Lane before the apparent westernmost boundary of Tract X-1.

In rendering judgment on the petition for permanent injunction based upon the documentary evidence and arguments of counsel, the trial court implicitly recognized the existence of disputed property extending eastward from the paved travel portion of McCoy Lane to the boundary of Tract X-1. Nevertheless, without addressing the issue of the extent of the area actually maintained by the parish, the trial court found that the Pierces were entitled to use the disputed property as a means of accessing McCoy Lane. In support of its assessment of the width of the public right of way obtained by tacit dedication, the trial court cited La. R.S. 48:220.1. In support of its finding that the Pierces were entitled to use the driveway across the disputed property, the trial court cited **Grantadams**, 688 So.2d at 1131, reasoning that "it's not in keeping with the concept of public use to limit a little bitty strip to—their right of passage."

We find that the trial court legally erred in its reliance upon inapposite statutory law. Louisiana Revised Statute 48:220.1 provides:

Whenever the Department of Highways, under its statutory authority takes over an existing road from a parish or municipality, unless there is an agreement between the two agencies to the contrary, the department shall acquire all of the rights which the ceding agency possessed with regard to the ceded road or street. In those instances where the highway was constructed by the parish or municipality without a recorded conveyance or dedication of the right of way by the landowner, and in those instances where the department has constructed a highway without a recorded conveyance or dedication by the landowner, the width of the right of way servitude for the said highway shall include the roadway, shoulder, roadside ditch and an area extending one and one-half feet beyond the rear or outside slope of the roadside ditch. Nothing herein shall affect title to any buildings or fences, nor require their removal without payment of just compensation therefor, nor shall anything herein affect title to the soil beneath the highway right of way nor to any minerals thereunder. The existence of the highway for a period in excess of three years shall vest title to the right of way servitude in the Department of Highways.[3]

The plain language of La. R.S. 48:220.1 dictates that it applies only in cases in which DOTD takes over an existing road from a parish or municipality. Here, there is no evidence that DOTD assumed control or maintenance of McCoy Lane from Livingston Parish. Thus, the trial court erred to the extent that it ascertained the width of the servitude of passage by reference to the position of the roadway, shoulder, roadside ditch and an area extending one

3. The Louisiana Department of Highways is now known as the Louisiana Department of Transportation and Development ("DOTD").

See **Lambert Gravel Co., Inc. v. Parish of West Feliciana**, 15–1225 (La.App. 1 Cir. 9/20/16), —— So.3d ——, ——.

and one-half feet beyond the rear or outside slope of the roadside ditch. See generally **Thompson v. State,** 94–2610 (La.App. 1 Cir. 4/23/96), 688 So.2d 9, 18 ("The highway must have been constructed after 1976 by DOTD and existed for an additional period of three years for [La. R.S. 48:220.1] to apply."). See also **Harkness v. Porter,** 521 So.2d 832, 834–35 (La. App. 2 Cir.), writ denied, 523 So.2d 1323 (La. 1988) (wherein the appellate court separately analyzed the distinct relevance of La. R.S. 48:220.1 and La. R.S. 48:491(B)).

We further find that the trial court compounded its legal error through misapplication of relevant jurisprudence. In **Grantadams,** 688 So.2d at 1131–32, the appellate court found it unnecessary to examine the issue of maintenance in order to determine the width of the right of way obtained by tacit dedication. There, the appellate court affirmed the lower court's decision approving of appellees' placement of a driveway over the shoulder area of a tacitly dedicated road, which property was in possession of appellants, noting the limited intrusion posed by the driveway and the appellees' position as landowners of property adjacent to the public right of way. Critically though, in that case, "the parties ha[d] stipulated that the driveway [wa]s located within the public right of way, albeit over land in the [appellants'] possession." **Grantadams,** 688 So.2d at 1132. Conversely, in the matter *sub judice,* the parties have not stipulated as to the extent of the public right of way, nor have the parties otherwise acknowledged that the driveway was constructed upon same.

Because the trial court committed legal error, we are authorized to exercise our constitutional authority to review the facts and render a judgment on the record. See La. Const. art. V, § 10. Occasionally, however, a preponderance of the evidence cannot be determined from a cold record, such as when there is a substantial conflict in the evidence. In such cases, we have the option to remand the matter for a new trial to ensure a fair resolution of the conflicting evidence. See e.g., **Diez v. Schwegmann Giant Supermarkets, Inc.,** 94–1089 (La.App. 1 Cir. 6/23/95), 657 So.2d 1066, 1070–71, writ denied, 95-1883 (La. 11/17/95), 663 So.2d 720; **Palumbo v. Shapiro,** 11–0769 (La.App. 4 Cir. 12/14/11), 81 So.3d 923, 930, writ denied, 12–0140 (La. 3/23/12), 85 So.3d 93.

We have examined the record in its entirety and cannot determine whether the Pierces proved, by a preponderance of the evidence, that they enjoyed a real right of ingress and egress from Tract X-1 to McCoy Lane over the portion of property extending eastward from the paved travel portion of McCoy Lane to the boundary of Tract X-1. In addition to the documentary evidence, which, as explained above, does not establish the limits of the area actually maintained by the parish, the trial court heard testimony from Robert Pierce and Matthew McCoy on the issue of damages. However, Mr. Pierce and Mr. McCoy offered only limited and vague testimony concerning the existence of property beyond the paved travel portion of McCoy Lane and did not testify as to the parish's maintenance of such property.

In sum, the evidence is insufficient to allow us to render judgment upon the cold record. Therefore, we elect to exercise our discretionary authority to vacate the trial court's final judgment and remand this matter for a new trial.

### DECREE

For the foregoing reasons, we vacate the trial court's final judgment, signed on April 15, 2015, granting the petition for permanent injunction and monetary damages in favor of the plaintiffs-appellees, Robert Ryan Pierce, Ashlea White

Pierce, William Earl Pierce, and Jeanette Oxner Pierce. We remand this case to the trial court for a new trial consistent with this opinion. The costs of this appeal are to be assessed equally to both parties.

**JUDGMENT VACATED; REMANDED.**

Higginbotham, J. concurs.